**In re: ALGER, COLUMBIA, JANUS, MFS, ONE GROUP, AND PUTNAM MUTUAL FUND LITIGATION**

No. 04–MD–15863.

United States District Court, D. Maryland.

June 2, 2004.

Christopher S. Hinton, Wolf Haldenstein Adler Freeman and Herz LLP, Alice McInerney, Ira Michael Press, Jeffrey Harold Squire, Kirby McInerney and Squire, Chet Barry Waldman, Wolf Popper LLP, Christine Marie Fox, Joel B. Strauss, Kaplan Fox LLP, Daniel P. Chiplock, Elizabeth H. Cronise, Robert Gerard Eisler, Steven E. Fineman, Lieff Cabraser Heimann and Bernstein LLP, David J. Bershad, Deborah Clark, Weintraub Milberg Weiss Bershad and Schulman LLP, Demet Basar, Mark Carl Rifkin, Wolf Haldenstein Adler Freeman and Herz LLP, H. Adam Prussin, Ronen Sarraf, Stanley M. Grossman, Pomerantz Haudek Block Grossman and Gross LLP, John Halebian, Lovell Stewart Halebian LLP, Joseph Fonti, Max W. Berger, Robert S. Gans, Timothy Alan DeLange, Bernstein Litowitz Berger and Grossmann LLP, Kim E. Levy, Peter Edwards Seidman, Sr., Milberg Weiss Bershad and Schulman LLP, New York City, Alan Schulman, Jerald Bien-Willner, Bernstein Litowitz Berger and Grossmann LLP, San Diego, CA, Andrew Steven Friedman, Bonnett Fairbourn Friedman and Balint PC, Phoenix, AZ, Barbara Z. Blumenthal, Julie McCurdy Williamson, Hoffman Reilly Pozner and Williamson, Joseph J. Zonies, Kritzer Zonies LLC, Denver, CO, Brian Barry, Law Office of Brian Barry, Los Angeles, CA, Bruce L. Simon, Cotchett Pitre Simon and McCarthy, Burlingame, CA, Denise Davis Schwartzman, Chimicles and Tikellis LLP, Haverford, PA, Eric Lawrence Zagar, Schiffrin and Barroway LLP, Cynwyd, PA, Gary B. O'Connor, James E. Hartley, Jr., Drubner Hartley and O'Connor LLC, Waterbury, CT, Gregg M. Fishbein, Karen Hanson Riebel, Richard A. Lockridge, Lockridge Grindal Nauen PLLP, Minne-

apolis, MN, Henry A. Cirillo, The Furth Firm LLP, Richard M. Heimann, Lieff Cabraser Heimann and Bernstein, San Francisco, CA, John Bucher Isbister, William C. Sammons, Tydings And Rosenberg LLP, Marshall N. Perkins, Charles J. Piven PA, Baltimore, MD, Karen L. Morris, Morris and Morris LLC Counselors At Law, Wilmington, DE, Mark C. Molumphy, Cotchett Pitre Simon and McCarthy, Burlingame, CA, Nicholas E. Chimicles, Timothy Newlyn Mathews, Chimicles and Tikellis, Haverford, PA, effrey S. Kruske, Law Office of Jeffrey S. Kruske, Overland Park, KS, for Plaintiffs.

Adam B. Rowland, Robert J. Jossen, Swidler Berlin Shereff Friedman LLP, David Stanley Frankel, Gary Philip Naftalis, Eric Anders Tirschwell, Kramer Levin Naftalis and Frankel LLP, Breon S. Peace, Thomas J. Moloney, Cleary Gottlieb Steen and Hamilton, Daniel J. Kramer, Liza Velazquez, Paul Weiss Rifkind Wharton and Garrison LLP, Daniel A. Pollack, Pollack and Kaminsky, James V. Parravani, Stewart D. Aaron, Dorsey and Whitney LLP, Julian Walter Friedman, Maureen Nakly, Stillman and Friedman PC, Karen Idra Kaiser, Cahill Gordon and Reindel LLP, Kenneth M. Kramer, Shearman and Sterling LLP, Lewis J. Liman, Cleary Gottlieb and Hamilton, Martin JE Arms, Michael S. Winograd, Paul K. Rowe, Sarah Fern Meil, Stephen R. DiPrima, Wachtell Lipton Rosen and Katz, Robert Hardy Pees, Akin Gump Strauss Hauer and Feld LLP, Seth M. Schwartz, Skadden Arps Slate Meagher and Flom LLP, Stephen W. Greiner, Willkie Farr and Gallagher LLP, New York City, Andrew Santo Tulumello, Mark A. Perry, Gibson Dunn and Crutcher LLP, Thomas Blaisdell Smith, Ropes and Gray LLP, Washington, DC, Christopher MacNeil Murphy, John Patrick Killacky, Joseph Gerald Fisher, Steven Samuel Scholes, McDermott Will and Emery, Dan-

iel Joseph Hayes, John William Rotunno, Kenneth E. Rechtoris, Bell Boyd and Lloyd LLC, Chicago, IL, David Clarke, Jr., Piper Rudnick LLP, Philip S. Khinda, Ropes and Gray LLP, Robert N. Eccles, O Melveny and Myers LLP Washington, DC, David M. Ryan, George J. Skelly, Nixon Peabody LLP, Jeffrey B. Rudman, Jonathan A. Shapiro, William H. Paine, Hale and Dorr LLP, John D. Donovan, Jr., Ropes and Gray LLP, John A. D. Gilmore, Kirsten M. Nelson, Piper Rudnick LLP, Matthew A. Stowe, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, Eric Robert Maier, James Patrick Clark, Gibson Dunn and Crutcher LLP, Matthew P. Eastus, O'Melveny and Myers LLP, Los Angeles, CA, James D. Mathias, Strider Dickson, Piper Rudnick LLP, Nichole Michele Galvin, Price O. Gielen, Neuberger Quinn Gielen Rubin and Gibber, Baltimore, MD, Thomas Lee Allen, Reed Smith LLP, Pittsburgh, PA, for Defendants.

Bradley P. Dyer, Stull Stull and Brody, New York City, for Movants.

## OPINION

MOTZ, District Judge.

This MDL proceeding encompasses numerous actions, some originally filed in federal court and others removed to federal court, arising from "late trading" and "market-timed" transactions of mutual fund shares. The MDL Panel has named four transferee judges (Judge Catherine Blake, Judge Andre Davis, Judge Frederick Stamp, and myself), and we have organized the cases by family of fund in four separate tracks. Presently pending in the track assigned to me are motions to remand to state court three separate class actions: *Kaufman v. Janus Capital Group, et al., Sayegh v. Janus Capital Corp., et al, and Vann v. Janus Capital Group, et al.*[1]

---

**1.** Also pending is a motion to remand in an    individual action, *Parisi v. Marsh McLennan*

I have concluded to defer ruling upon the motions until a later stage of these proceedings. I will briefly state the reasons I have decided upon this course of action.[2]

### A.

An action is removable under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") if four conditions are met: "(1) the suit is a 'covered class action,' (2) the plaintiffs' claims are based on state law, (3) one or more 'covered securities' has been purchased or sold, and (4) the defendant misrepresented or omitted a material fact [or used or employed any manipulative or deceptive device or contrivance] 'in connection with the purchase or sale of such security.'" *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1342 (11th Cir.2002). It is undisputed here that the first three of these conditions are met. Plaintiffs contend, however, that their claims do not arise from any material misrepresentations or omissions made by defendants (or any manipulative or deceptive device used by defendants) in connection with plaintiffs' purchase or sale of a covered security. Rather, according to plaintiffs, their claims arise from their status as *holders* of

mutual fund shares and those claims are not removable under SLUSA.

One apparent fallacy in plaintiffs' contention is that the allegations made in their complaints, particularly in the *Kaufman* and *Sayegh cases,* are broad enough to include within the proposed classes persons who purchased and/or sold mutual fund shares during the class periods. They are not limited to persons who purchased their shares prior to the class period and who continued to hold their shares throughout the class period. *Compare Gordon v. Buntrock,* 2000 WL 556763, at *1 (N.D.Ill. Apr. 28, 2000). The complaints also include averments of material misstatements made in prospectuses pertaining to efforts undertaken by the defendant mutual funds to police and prevent late trading and market-timed transactions. Taken together, these allegations appear sufficient to make the actions removable under SLUSA. *See Riley,* 292 F.3d at 1345; *Cape Ann Investors LLC v. Lepone,* 296 F.Supp.2d 4, 12 (D.Mass. 2003). *But see Grabow v. Pricewaterhousecoopers LLP,* 313 F.Supp.2d 1152 (N.D.Okla.2004); *Meyer v. Putnam Int'l Voyager Fund,* 220 F.R.D. 127 (D.Mass. 2004).[3]

---

*Cos., Inc., et al.* Although the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") does not apply to *Parisi* since it is not a class action, *see* 15 U.S.C. § 77p(c), I will defer ruling on that motion as well since its disposition might depend upon whether the plaintiff has a federal cause of action under Rule 10(b)(5) that provides federal question jurisdiction.

2. In accordance with the procedure we have agreed to follow in ruling upon non-administrative issues, Judges Blake, Davis, and Stamp are not signatories to this opinion. Each of them will enter a separate order regarding the motions to remand in the cases assigned to them. While they may decide to adopt my opinion (with or without elaboration), each of

them will exercise independent judgment as to whether to do so.

3. If persons who bought shares pursuant to a dividend reinvestment program during the class period are deemed to be purchasers for purposes of Rule 10(b)(5), *see Deutschman v. Beneficial Corp.,* 761 F.Supp. 1080, 1087 (D.Del.1991); *In re Consumers Power Co. Sec. Litig.,* 105 F.R.D. 583, 590 (E.D.Mich.1985), excluding purchasers from a proposed class for the purpose of avoiding SLUSA removal might result in a substantial reduction in the size of the class in light of the large number of mutual fund investors who are likely to have participated in a dividend reinvestment program.

### B.

As I have indicated, plaintiffs assert that for purposes of SLUSA removability it is their own purchase or sale of securities (or absence thereof) during the class period that should be focused upon in determining whether material misrepresentations or omissions have been made, or manipulative or deceptive devices used, "in connection with the purchase or sale of a covered security." Several courts have adopted this approach. *See, e.g., Riley,* 292 F.3d 1334; *Green v. Ameritrade, Inc.,* 279 F.3d 590 (8th Cir.2002); *Gutierrez v. Deloitte & Touche, L.L.P.,* 147 F.Supp.2d 584 (W.D.Tex.2001). There is, however, an alternative way in which the issue can be analyzed: to focus upon the late trades and market-timed transactions allegedly permitted by the mutual funds and engaged in by the hedge funds.

If that approach were followed, removal of class actions would be proper under SLUSA on that ground alone. 15 U.S.C. § 77p(b) & (c). *Cf. Nekritz v. Canary Capital Partners, LLC,* No. 03–5081 (D.N.J. Jan. 12, 2004). The late trades and market-timed transactions involved "the purchase or sale of a covered security" and, according to the facts alleged by plaintiffs, were "manipulative and deceptive." Moreover, these transactions allegedly caused damage to plaintiffs as purchasers, sellers, and holders of covered securities, and part of the alleged wrongdoing involved misstatements of material facts made in mutual fund prospectuses.

The reason for the conventional wisdom that has emerged in denying removal on this basis is that courts have looked to Rule 10(b)(5) and the cases interpreting that rule in considering the meaning of the term "in connection with the purchase or sale of a covered security" as used in SLUSA. In *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court held that a plaintiff must have purchased or sold securities in order to have a cognizable Rule 10(b)(5) claim. Therefore, the courts that have accepted plaintiffs' argument reason that claims asserted by persons who only hold mutual fund shares, rather than purchase and/or sell them, during the class period are not removable.

It appears entirely reasonable and appropriate to consider, as these courts have done, Rule 10(b)(5) and *Blue Chip Stamps* when interpreting the removal provisions of SLUSA. However, the Supreme Court's recent decision in *SEC v. Zandford,* 535 U.S. 813, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002), suggests that *Blue Chip Stamps* should not be mechanically applied. There, the Court held that in a regulatory enforcement action a Rule 10(b)(5) claim is stated where the alleged fraud "coincides" with the sale of securities. Furthermore, in *Blue Chip Stamps* the plaintiffs never purchased or held any shares. Thus, the context of the Court's decision was far different from the one presented in this litigation.

As the Court acknowledged in *Blue Chip. Stamps,* its holding was based primarily upon prudential considerations. Those same considerations appear to weigh strongly in favor of SLUSA removability. In enacting both SLUSA and the Private Securities Litigation Reform Act ("PSLRA"), Congress has manifested its concern about the proliferation of securities litigation, and the applicability of *Blue Chip Stamps* here must be viewed with those statutes in mind. Moreover, the federal interests at stake in these proceedings are substantial. The alleged wrongdoing giving rise to plaintiffs' claims occurred in the national securities market—a market extensively regulated by federal authorities. Effective, coordinated, and timely resolution of the issues presented in this litigation is important both for the health of the national economy and for the main-

tenance of public confidence in the mutual fund industry. The appropriate method of pricing mutual fund shares, which is governed by the Investment Company Act and regulations promulgated pursuant to it, is drawn into question by plaintiffs' claims. Although this alone is insufficient to create a federal question for purposes of removability, the effect of decisions made in this litigation upon the regulatory pricing scheme would seem to be a prudential consideration that should be taken into account in determining the scope of SLUSA and the applicability of *Blue Chip Stamps* to holders of mutual fund shares.

The need for a single rule of decision in a complex financial environment in which innumerable institutions and firms participate also appears self-evident. Likewise, fair and equitable treatment of all persons in a definable class who suffered the same type of injury weighs in favor of a uniform federal remedy. Principle, policy, and common sense all appear to dictate that if holders of mutual fund shares suffered dilution of the value of their shares from wrongdoing in a securities market, a national forum should be open to them, regardless of whether or not they purchased or sold shares during the class period, to assure that all who were similarly damaged are similarly treated.

Thus, even recognition of a federal cause of action under Rule 10(b)(5), which would serve these important federal interests, might well not be barred by *Blue Chip Stamps*.[4] The "danger of vexatious litiga-tion ... from a widely expanded class of plaintiffs under Rule 10(b)(5)" noted by the Court in *Blue Chip Stamps*, 421 U.S. at 740, 95 S.Ct. at 1927, is not present. The class of potential plaintiffs, although extremely large, is clearly definable: all persons who held shares in the affected mutual funds during the period in which the alleged wrongdoing occurred. Indeed, not recognizing a federal cause of action in the context of these cases might greatly increase the danger of vexatious litigation and tend to "benefit ... speculators and their lawyers" at the expense of innocent investors. *Id.* at 739, 95 S.Ct. at 1927 (quoting from *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 867 (2d Cir.1968)).

I am not now so holding, however. While the issues surrounding the question have been touched upon in the briefing and oral argument on the remand motions, they have not been the primary focus of the parties' attention. Furthermore, other plaintiffs and defendants not parties to the actions sought to be remanded have a significant interest in any ruling on these issues. Therefore, it is appropriate to defer ruling on the present motions, which turn at least in part upon an analysis of the effect of *Blue Chip Stamps* upon removal under SLUSA and also implicate the question of the existence of a federal cause of action for securities holders, until other parties have had the opportunity to be heard after consolidated complaints have been filed and any motions to dismiss directed at them have been fully argued.[5]

---

4. For sake of clarity of analysis, I should perhaps note that an action could be removable under SLUSA on the basis of the purchases and sales made by a hedge fund without the creation of a federal cause of action in favor of mutual fund shareholders under Rule 10(b)(5). In that event, the removed state law claims would be dismissed, *see* 15 U.S.C. § 77p(b), but a derivative action could be maintained on behalf of the shareholders. *See* 15 U.S.C. § 77p(f)(2)(B); *Blue Chip Stamps*, 421 U.S. at 738, 95 S.Ct. at 1926.

(Whether such an action could be maintained for persons who held shares during the class period but who have now sold them can be decided when and if it becomes necessary to do so.)

5. I say "at least until other parties have had the opportunity to be heard after consolidated complaints have been filed and any motions to dismiss directed at them have been fully argued" because it may be that even after motions to dismiss have been argued, I will

C.

Plaintiffs will suffer little or no prejudice by a deferral of decision on the remand motions. Counsel in cases that have previously been remanded (before being transferred to this district under 28 U.S.C. § 1407) have agreed to a temporary stay of discovery. Absent such agreement, I have the authority under SLUSA and the PSLRA to order such a stay, 15 U.S.C. §§ 77z–1(b)(4) & 78u–4(b)(3)(D), and it is likely I would grant a stay in any remanded action (including the ones subject to the present motions) to the extent necessary to assure that the state and federal proceedings are effectively coordinated.

For these reasons, I will defer ruling upon the pending motions to remand until a later stage of these proceedings.

continue to defer ruling on the remand motions. Lead counsel in these proceedings have indicated they anticipate filing consolidated class complaints asserting state law claims. Presumably, the plaintiffs and members of the putative classes in the cases in which the remand motions have been filed will be members of the classes sought to be certified in the consolidated complaints. If in those complaints non-purchaser/non-seller plaintiffs assert not only state law claims but alternative federal claims as well, it is possible I would deny motions to dismiss without prejudice to the arguments underlying them being renewed at a later stage of these proceedings. Again, I am not prejudging the issue but I can conceive it might be in the interest of the just and expeditious resolution of the class actions to avoid making rulings that in the long run may prove academic, disruptive, and costly to decide. The focus and purpose of these proceedings should be to compensate any persons who have been damaged by any wrongful conduct, not to generate unnecessary counsel fees and other litigation expenses.